**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
────────────────────────────────────

**NATURAL RESOURCES DEFENSE COUNCIL, INC.,**

                  Plaintiff,

      - against –

**NATIONAL MARINE FISHERIES SERVICE and**
**UNITED STATES DEPARTMENT OF COMMERCE,**

                Defendants.

────────────────────────────────────

**05 Civ. 5172 (JGK)**

**OPINION AND ORDER**

**JOHN G. KOELTL, District Judge:**

The defendants, the National Marine Fisheries Service
("NMFS") and the United States Department of Commerce ("DOC"),
moved for summary judgment pursuant to Fed. R. Civ. P. 56,
arguing that they have sufficiently responded to the plaintiff's
requests under the Freedom of Information Act, 5 U.S.C. § 552
("FOIA"), and that material that was withheld is exempt from
disclosure.  In particular, the defendants argue that portions
of a document entitled "Preliminary Report on the Mass Stranding
in North Carolina, January 15, 2005" (the "April Document"),
which was attached to an April 22, 2005 email (the "April
Email"), are exempted from disclosure because of the
deliberative process privilege.

The plaintiff, Natural Resources Defense Council, Inc.
("NRDC"), cross moved for summary judgment, arguing that the
defendants' search for responsive records was inadequate and
that a further search is required, and also challenged the
withholding of the April Document, which concerns a January 2005

incident of mass stranding of whales in North Carolina. The
plaintiff argues that it needs the information in the April
Document before the January 30, 2006 closing of the public
comment period on a proposed Navy sonar training range off the
coast of North Carolina.[1] The plaintiff requested in the
alternative that the Court review in camera the unredacted April
Document and the April Email. The Court held a hearing on
December 22, 2005, at which it determined that it was
appropriate to review the document in camera.

The defendants submitted the unredacted versions of both
the April Email and the April Document to the Court, which the
Court has reviewed in camera.[2] The defendants also produced
redacted copies of the documents to the plaintiff that disclosed
certain material, but excised material the defendants contend is
covered by the deliberative process privilege. The parties
agreed to discuss further the scope of an additional search, and
thus the Court will not rule at this time with respect to the
adequacy of the defendants' search.

---

[1] The closing of the public comment period was originally scheduled for
December 28, 2005. At the December 22, 2005 argument, the Court was informed
that the cutoff period had been extended to January 30, 2006.
[2] The plaintiff has not specifically challenged the withholding of the
redacted material in the April Email. To the extent that the plaintiff's
objections to the withholding of the April Document apply to the April Email,
the Court finds that the redacted material in the April Email is covered by
the deliberative process privilege.

Except as otherwise noted, the following facts are
uncontested.  NMFS is part of the National Oceanic and
Atmospheric Administration ("NOAA"), which in turn is a division
of the DOC.  NOAA conducts investigations of incidents where
marine mammals become "beached" or stranded in shallow water.
(Defendants' Statement Pursuant to Local Civil Rule 56.1 ("Def.
Stmt."), ¶ 1; Plaintiff's Statement Pursuant to Local Civil Rule
56.1, Section II ("Pl. Counterstmt."), ¶ 1.)  NOAA also has
investigated the possible effects on marine mammals of sonar
technology used by the Department of Navy ("Navy").  (Def. Stmt.
¶ 1; Pl. Counterstmt. ¶ 1.)  In January 2005, the NMFS announced
that it was developing new guidelines for determining when
exposure to undersea noises could constitute a "take" under the
Marine Mammal Protection Act (the "MMPA"), 16 U.S.C. § 1372,
which prohibits the taking of marine mammals.  (Plaintiffs'
Statement Pursuant to Local Civil Rule 56.1, Section I ("Pl.
Stmt."), ¶ 12; Defendant's Response to Plaintiffs' Statement
Pursuant to Local Civil Rule 56.1 ("Def. Counterstmt."), ¶ 12.)

Since 1994, NRDC has sought to draw attention to the impact
of high-intensity active sonar on whales and other marine life.
(Pl. Stmt. ¶ 1; Def. Counterstmt. ¶ 1.)  On March 12, 2004, NRDC
submitted a FOIA request (the "First Request") for all records,
with certain exceptions, in NMFS' possession and control "that

concern or relate to the environmental impacts of mid-frequency military active sonar." (Pl. Stmt. ¶ 15; Def. Counterstmt. ¶ 15.) On February 16, 2005, NRDC submitted a second FOIA request (the "Second Request") that expanded the original request to include, among other things, "all documents concerning or relating to the environmental impacts of mid-frequency military active sonar that have been produced or have otherwise come into NMFS' possession after March 12, 2004," the date of the First Request. (Pl. Stmt. ¶ 16; Def. Counterstmt. ¶ 16.)

The parties dispute whether the defendants adequately searched for documents responsive to the First and Second Requests. In the course of briefing the pending motions, the defendants advised the Court that they had voluntarily decided to conduct certain additional searches and, after argument, the parties notified the Court that they are discussing a possible resolution regarding the adequacy of search issues, and require additional time to confer and potentially resolve those issues. (Pierre G. Armand Letter dated January 5, 2006 ("Armand Letter"), at 2.) As a result, the Court will not address the adequacy of search issues at this time.

The defendants' search located 2,153 pages of documents responsive to the plaintiff's FOIA requests, in addition to 23 pages produced earlier. The defendants produced 1,847 pages in their entirety to the plaintiff, and forwarded another 105 pages

4

to the Navy for its direct response to the plaintiff.  The remaining 201 pages were withheld from disclosure, either in full or in part, pursuant to the deliberative process and attorney-client privileges.  (Def. Stmt. ¶ 15; Pl. Counterstmt. ¶ 15.)

In particular, the April Email was produced in redacted format and the April Document was initially withheld in its entirety on deliberative process privilege grounds.  (Pl. Stmt. ¶ 48; Def. Counterstmt. ¶ 48.)  Both the April Email and the April Document were authored by Teresa K. Rowles, Director of NOAA's Marine Mammal Health and Stranding Response Program. (Declaration of Teresa K. Rowles, dated Nov. 21, 2005 ("Rowles Decl."), ¶¶ 1, 4.)  The April Document is a one-page document with bulleted text that concerns the potential causes of a January 2005 incident of mass stranding of whales in North Carolina.  (Rowles Decl. ¶¶ 4, 5.)  The parties dispute whether the April Document is a draft report with preliminary findings; a final report is expected to be issued in the first half of 2006.  (Rowles Decl. ¶ 3; Pl. Stmt. ¶ 50; Def. Counterstmt. ¶ 50.)  The April Document was later released to the plaintiff in a redacted form.  (Armand Letter at 1.)  The plaintiff has not sought to compel the production of any other documents that have been withheld in whole or in part as exempt from disclosure.

Generally, a party is entitled to summary judgment when there is no "genuine issue of material fact," and the undisputed facts warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA." Carney v. Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994); see also Ruotolo v. Dep't of Justice, Tax Div., 53 F.3d 4, 9 (2d Cir. 1995). The statute's exemptions from the basic disclosure requirement "are to be narrowly construed with all doubts resolved in favor of disclosure." Local 3, Int'l Bhd. of Elec. Workers v. NLRB, 845 F.2d 1177, 1180 (2d Cir. 1988); see also Tigue v. U.S. Dep't of Justice, 312 F.3d 70, 76 (2d Cir. 2002).

In this case, the defendants invoked the "deliberative process" privilege under FOIA's Exemption 5 to withhold the April Email and April Document. Exemption 5 permits an agency to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).

The deliberative process privilege is "a sub-species of work-product privilege that covers documents reflecting advisory

opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." Tigue, 312 F.3d at 76 (internal citation and quotation marks omitted). It is intended to promote candid discussion between agency officials and protect the quality of agency decisions. Nat'l Council of La Raza v. Dep't of Justice, 411 F.3d 350, 356 (2d Cir. 2005). To qualify for the deliberative process privilege, the government must show that the withheld materials, in addition to being inter-agency or intra-agency documents, are both "pre-decisional" and "deliberative." Grand Central Partnership v. Cuomo, 166 F.3d 473, 482 (2nd Cir. 1999). Documents are pre-decisional when they precede an agency decision and are prepared in order to assist an agency in arriving at its decision. Id. Documents are deliberative when they comprise part of the process by which government decisions are made. Id. The privilege focuses "on documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." Hopkins v. U.S. Dept. of Housing and Urban Development, 929 F.2d 81, 84-85 (2d Cir. 1991) (internal quotation marks and citations omitted).

The privilege does not, as a general matter, extend to purely factual material. Local 3, 845 F.2d at 1180. FOIA requires that "[a]ny reasonably segregable portion of a record

shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."  5 U.S.C. § 552(b).  Thus, if the withheld document contains factual material, the Court must determine whether the factual material is "'inextricably intertwined' with the privileged opinions and recommendations such that disclosure would compromise the confidentiality of deliberative information that is entitled to protection under Exemption 5," or whether it is "'reasonably segregable' from the opinions and recommendations and therefore subject to disclosure."  Hopkins, 929 F.2d at 85 (internal quotation marks and citations omitted).

## III.

The plaintiff challenges the pre-decisional nature of the April Document, and argues that it contains factual information that should be disclosed.

The plaintiff initially argued that the April Document is not pre-decisional because no final agency report was identified, and thus it is a final report not covered by the privilege.  See Nat'l Council of La Raza, 411 F.3d at 356 (a final report "loses its predecisional and deliberative character, and accordingly, the deliberative process privilege no longer applies").  The defendants respond by characterizing the April Document as a "draft" of a final report that the NOAA expects to issue in the first half of 2006.  The April Document

is described as "a one-page bulleted draft report providing an overview of the investigation to date" of potential causes of a marine mammal mass stranding incident in North Carolina in January 2005.  (Rowles Decl. ¶ 4.)

The defendants' characterization stretches the concept of a "draft" too far, especially where the author of the April Document expects "NOAA's final report to differ significantly from the [April Document], which is merely an initial overview of the investigation in bullet-point format."  (Rowles Decl. ¶ 6.)  The April Document cannot be characterized as an early draft of the final report expected to be released in 2006.

 But pre-decisional documents protected by the deliberative process privilege are not limited to drafts of final reports, but include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency."  Grand Cent. Partnership, 166 F.3d at 482 (internal quotation marks and citation omitted).  The affidavit of the April Document's author states that "[n]one of the information in the [April Document] constitutes any final NOAA decision or even final findings since the work and investigation was ongoing."  (Rowles Decl. ¶ 6.)  Moreover, the released portions of the April Document itself indicate that "[f]urther analyses are ongoing and a full preliminary report is expected by mid to

late June." A final report was to be completed after additional analyses. It is clear from the author's affidavit and the document itself that the April Document was prepared in preparation for a later agency report, and is thus a pre-decisional document.

The plaintiff also argues that the defendants have not carried their burden of showing that the information withheld in the April Document is "deliberative," and that there is not purely factual information that is "reasonably segregable." The plaintiff points to unredacted portions of the April Document previously withheld as "deliberative" as being purely factual information, and suggests that additional factual information is present. For example, the second released bullet point stated: "Females represented the majority of animals (88%, 21/24). Animals were primarily adults and sub-adults." This is purely factual information that was appropriately disclosed.

Having reviewed the unredacted April Document in camera, the Court finds that most of the unreleased material in the April Document consists of similarly purely factual statements that are reasonably segregable from the opinions and recommendations as to agency policy. Most of the unreleased material contains necropsy information relating to the post-mortem examination of stranded whales. While these observations from the necropsy study are described in the document as

preliminary, they are still factual observations not covered by the deliberative process privilege.  On the other hand, the defendants had released portions of one bullet point, the third bullet point, and the withheld portions of that bullet point contained comments regarding the agency's process that are protected by the deliberative process privilege.

The defendants characterize the factual observations in the unreleased material as preliminary findings and opinions of the author that are subject to ongoing deliberation.  Subjective opinions with respect to an agency's policy are protected by the privilege to encourage the give-and-take of the deliberative process.  Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980).  But preliminary findings as to objective facts are not shielded, because an agency does not have the same discretion in determining facts as determining policy.  See Petroleum Information Corp. v. U.S. Dep't. of Interior, 976 F.2d 1429, 1436 (D.C. Cir. 1992) ("The release of materials that do not embody agency judgments--for example, materials relating to standard or routine computations or measurements over which the agency has no significant discretion--is unlikely to diminish officials' candor or otherwise injure the quality of agency decisions.  Requiring disclosure of such materials is fully 'consistent with efficient government operation.'") (internal citation omitted).

The defendants also argue that the factual findings in the April Document should be protected because disclosing the document would reveal the editorial decisions and thought processes of the drafters of the final report which is expected to be issued in 2006.  See Hamilton Securities Group Inc. v. Dep't of Housing and Urban Development, 106 F. Supp. 2d 23, 33 (D.D.C. 2000) (holding that even purely factual material may be protected if the manner of selecting or presenting those facts would reveal the deliberative process).  Disclosing tentative preliminary factual findings in the April Document is unlikely to reveal the decision making process involved in drafting the final report about a year later after receiving additional data. Moreover, the defendants have not met their burden of demonstrating that disclosing preliminary findings would reveal the decision making process with regard to policy--as opposed to factual--determinations in the final report.  See id. ("To the extent that predecisional materials, even if 'factual' in form, reflect an agency's preliminary positions or ruminations about how to exercise discretion on some policy matter, they are protected under Exemption 5.") (emphasis added) (internal citation omitted).

Thus, with the exception of the unreleased portions of the third bullet point, the unreleased material in the April Document is unprotected factual information that is reasonably

segregable from any privileged material, and is therefore
subject to disclosure.

## CONCLUSION

The plaintiff's motion for summary judgment is partially
granted with respect to the disclosure of certain unreleased
material in the April Document.  The Court will file under seal
a copy of the April Document marked to indicate to the
defendants which portion can remain redacted.  The defendants
are required to produce the remainder of the document by January
16, 2006.


**SO ORDERED.**

**Dated:  New York, New York**
**        January 9, 2006**

                                    _____
                                         **John G. Koeltl**
                                    **United States District Judge**

13